IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAWRENCE D. COPPEL, | * | |
| Litigation Assignee for the Benefit of Creditors of Linowes and Blocher LLP | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-0674 |
| WILLIAM W. RIGGINS, III, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Lawrence D. Coppel is a court-appointed Litigation Assignee for the benefit of creditors of Linowes & Blocher LLP (L&B), a now-defunct law firm. He has brought this suit under diversity jurisdiction to recover transfers that were made to Defendant William W. Riggins, III, a former member of L&B, alleging that these transfers were improperly made before the payment of the law firm's creditors.

Presently pending is Defendant's Motion to Dismiss (ECF No. 10.) Riggins argues that Coppel is not the party in interest and therefore his citizenship is irrelevant for purposes of diversity jurisdiction. Alternatively, Riggins seeks to compel arbitration pursuant to L&B's Partnership Agreement. As a third alternative, Riggins asks this Court to abstain in the exercise of its jurisdiction. The parties' submissions have been reviewed, and a hearing was conducted on December 7, 2023. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth on the record and more fully below, Defendant's Motion to Dismiss (ECF No. 10) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 1) and are accepted as true for the purpose of Defendant's Motion to Dismiss.

Linowes and Blocher LLP ("L&B") was a law firm that served clients primarily located within the metropolitan Washington, D.C. region. (*Id.* at ¶ 10.) It opened as a general partnership in 1973 and reformed as a Maryland limited liability partnership in 1995. (*Id.*) In 1987, the firm established a defined benefit pension plan, which required the Plan to pay a specified benefit upon an employee's retirement. (*Id.* at ¶ 17.) L&B left the pension plan unfunded at the time of its inception, with the intent that it would be funded through future annual contributions and any return from stocks, bonds, and other investments. (*Id.*) On May 8, 2004, L&B froze the pension plan with respect to eligibility and benefit accruals for partners, with no benefits for partners accruing and no new partners eligible to participate thereafter. (*Id.* at ¶ 18.) On May 31, 2009, the pension plan was frozen with respect to eligibility and benefit accruals for all other participants. (*Id.* at ¶ 19.)

L&B paid compensation to its partners under the Partnership Agreement, which provided that equity partners would be paid from L&B's profits rather than via a predetermined annual compensation. (*Id.* at ¶ 30.) Equity partners were not guaranteed any amount of compensation in any given year. (*Id.*) One form of payment to partners was capital

account repayments, which repaid former equity partners on account of the capital contributions each former equity partner had been required to contribute to L&B at the time each was admitted as an equity partner. (*Id.* at ¶ 32.) L&B issued these payments even as the financial health of the firm declined into insolvency. (*Id.* at ¶ 35.)

The unfunded pension plan was a large source of liability for the firm, and since December 31, 2016, L&B's liabilities were in excess of the fair value of its assets. (*Id.* at ¶ 23.) An Assignment for the Benefit of Creditors ("the Assignment") was executed on May 14, 2020. (*Id.* at ¶ 2.) The firm closed its doors on June 30, 2020 because it was no longer financially viable. (*Id.* at ¶ 12.)

On July 7, 2020, the Assignee for the benefit of creditors of L&B, Heather Dlhopolsky, filed a petition in the Circuit Court for Montgomery County requesting that the Circuit Court assume jurisdiction over the estate of L&B created by the Assignment (the "ABC proceeding"). (*Id.* at ¶ 2.) On July 15, 2020, the Circuit Court entered an Order in the ABC proceeding declaring L&B to be insolvent and assuming jurisdiction over the assignment estate. (*Id.* at ¶ 3.) On May 28, 2021, "to address potential conflicts of interest," Dlhopolsky filed a motion to appoint a Litigation Assignee to (a) prosecute any avoidance claims that Dlhoposky held against former L&B partners and (b) object to claims for unpaid capital filed by former partners. (*Id.* at ¶ 4; ECF No. 12 at 3.)[1] On July 22, 2021, the Circuit Court entered a consent order appointing Lawrence D. Coppel as Litigation Assignee, with power to

---

[1] According to Riggins, Dlhopolsky "is a former partner of L&B who herself had received compensation from the Firm, just like the Defendant and other former equity partners of the Firm. As a result, she had substantial ethical and practical conflicts in pursuing the 'Avoidance Action' claims that are the subject of the pending complaints." (ECF No. 11 at 6.)

prosecute avoidance claims and to file objections to unpaid capital claims. (ECF No. 1 at ¶ 5.)

On March 10, 2023, Plaintiff Lawrence D. Coppel filed this action against Defendant William W. Riggins, III, a member of the Maryland bar and a former equity partner of L&B, in this Court based on diversity of citizenship, seeking damages in the amount of $806,841,95 plus interest. (ECF No. 1.) The one-count complaint alleges that, while L&B was insolvent, it made transfers to Riggins representing draws of anticipated profits, Riggins's share of profits based on the prior calendar year, and bonuses relating to services provided during the prior calendar year. (*Id.* at ¶ 44.) These transfers, according to the Complaint, do not represent fair and reasonable compensation for services that may have been provided by Riggins during the 120 days before or after the transfers were made. (*Id.* at ¶ 45.) The Complaint alleges this was a violation of Md. Ann. Code., Com. Law § 15-208(a). (*Id.* at ¶ 47.) On May 12, 2023, Riggins filed a Motion to Dismiss (ECF No. 10) and a Memorandum in Support (ECF No. 11). Coppel filed his reply (ECF No. 12) on May 26, 2023, and Riggins filed a response (ECF No. 13) on June 9, 2023. This Court conducted a hearing on December 7, 2023. The motion is ripe for review.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v.*

*United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The challenge in this case is a facial challenge.

In determining whether jurisdiction exists, the district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

**ANALYSIS**

**I.      Diversity Jurisdiction**

Diversity jurisdiction requires that the amount in controversy exceed $75,000 and that the suit be between citizens of different states. 28 U.S.C. § 1332(a)(1). As this Court has previously held, "diversity jurisdiction must be based only on the citizenship of the real parties in interest, ignoring the citizenship of merely nominal or formal parties." *Nat'l Ass'n of State Farm Agents, Inc. v. State Farm Mut. Auto. Ins. Co.*, 201 F. Supp. 2d 525, 529 (D. Md. 2002) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). Judge Chasanow has specifically noted that "[c]ourts look to the citizenship of a fiduciary (such as a receiver) rather than the entity she represents, when 'the law of the appointing authority permits [her] to sue in [her] own name, without joining any of the persons that [she] represents.'" *Mann Bracken, LLP v. Exec. Risk Indem., Inc.*, No. CV DKC 15-1406, 2015 WL 5721632, at *3 (D. Md. Sept. 28, 2015) (all but first alteration in original) (quoting *Gross v. Houghland*, 712 F.2d 1034, 1037 (6th Cir. 1983)).

Moreover, "courts generally "treat [a receiver] as the plaintiff[ ]" for purposes of diversity jurisdiction." *Mann Bracken*, 2015 WL 5721632, at *4 (alterations in original) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 242 (1934)); *see also Barber v. Powell*, 135 F.2d 728, 730–31 (4th Cir. 1943) ("[T]he personal citizenship (domicile) of the receiver (not that of the corporation of which he was receiver) should govern."). Fiduciaries, such as receivers or assignees, are the real parties in interest for purposes of diversity jurisdiction where they possess "certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*, 446 U.S. at 464; *see also Oak Plaza, LLC v. Buckingham*, No. CV DKC 22-0231, 2022 WL 1591404, at *4 (D. Md. May 19, 2022) ("The rationale for looking to the receiver's citizenship is that representatives with sufficient control over represented parties are the real parties in interest.").

Here, both requirements for diversity jurisdiction are met. The amount in controversy clearly exceeds $75,000. Coppel is a resident of Maryland, and Riggins is a resident of the District of Columbia. (ECF No. 1 at 2.) Defendant argues, however, that Coppel is not the real party in interest, and therefore diversity is lacking. Defendant's argument lacks merit. Here, as in *Mann Bracken*, the individual authorized to bring claims on behalf of a former law firm is the party in interest. As the Consent Order from the Circuit Court for Montgomery County states, Coppel "shall have full power and authority to prosecute the Avoidance Claims and objections to Unpaid Capital Claims and Heather Dlhopolsky shall have no further authority or responsibility as to the Avoidance Claims and objections to Unpaid Capital Claims." (ECF No. 11-11 at 2.) In other words, Coppel is the only person who can bring Avoidance Claims. He therefore stands in the shoes of Heather Dlhopolsky with respect to

6

the Avoidance Claims, and he is the party in interest under the principles set forth in *Navarro*. Therefore, complete diversity exists between the parties. Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction (ECF No. 10) is DENIED.

## II.     Abstention Doctrine

Defendant also argues that this Court should abstain from exercising jurisdiction over this case because "weighty state interests are involved." (ECF No. 11 at 13.) However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Defendant's arguments in favor of ignoring the rule are not persuasive. Notably, Coppel seeks legal monetary damages. Here, as in *Mann Bracken*, that renders abstention inappropriate. *See Myles Lumber Co. v. CAN Financial Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (citing *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 721 (1996)). As such, there is no danger of "disrupt[ing] the State's attempt to ensure uniformity in the treatment of an essentially local problem." *New Orleans Public Service, Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350, 364 (1989).

## III.    Arbitration

Finally, Defendant argues that a setoff claim is subject to arbitration pursuant to Section 13.1 of L&B's Amended and Restated Partnership Agreement. (ECF No. 11-2.) Initially, there is a fundamental question as to whether this section would apply in this action alleging a fraudulent conveyance. Furthermore, counsel for the Defendant admitted at the hearing on December 7, 2023 that this argument was premature, as no such claim has yet been made. As such, compelling arbitration is inappropriate at this juncture.

## CONCLUSION

For the reasons set forth on the record and above, Defendant's Motion to Dismiss (ECF No. 10) is DENIED.

A separate Order follows.


Dated: December 8, 2023

/s/
Richard D. Bennett
United States Senior District Judge
